IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T. SWARTZ, | ) | CASE NO. 5:14 CV 2723 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

**A.    Nature of the case and proceedings**

Before me[1] is an action by James T. Swartz under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Swartz was forty-two years old on the date that his application was filed.[11]  He has a high school education and previously worked as a carpenter for a construction home improvement company.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Swartz had the following severe impairments: degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, pancreatitis, depression, panic disorder, anxiety disorder and polysubstance abuse.[13]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Swartz's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant may occasionally stoop, crouch, but may

---

[7] ECF # 15 (Swartz's brief); ECF # 16 (Commissioner's brief); ECF # 17 (Swartz's reply brief).

[8] ECF # 15-2 (Swartz's charts); ECF # 16-1 (Commissioner's charts).

[9] ECF # 15-1 (Swartz's fact sheet).

[10] ECF # 19.

[11] ECF # 16 at 2.

[12] *Id.*

[13] Transcript ("Tr.") at 20.

never crawl, climb ladders, ropes or scaffolds; the claimant must avoid concentrated exposure to dust fumes, odors, gases and poor ventilation; the claimant must avoid all exposure to workplace hazards; the claimant is limited to the performance of simple, routine, repetitive tasks that do not involve arbitration, negotiation, confrontation, directing the work of, or being responsible for the safety of, others, or conferral upon the claimant of responsibility for the safety or welfare of others, performed in a work setting free of strict production quotas, piece-rate work or assembly line work, which setting requires no more than occasional interaction with others.[14]

The ALJ decided that this RFC precluded Swartz from performing his past relevant work as a construction carpenter.[15]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Swartz could perform.[16] The ALJ, therefore, found Swartz not under a disability.[17]

## C.    Issues on judicial review and decision

Swartz asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Swartz presents the following issues for judicial review:

---

[14] *Id.* at 22.

[15] *Id.* at 28.

[16] *Id.* at 29.

[17] *Id.*

- The ALJ failed to give a valid reason for failing to give the greatest weight to the treating sources.[18]

- The ALJ did not carry his burden at Step Five of the Sequential Evaluation.[19]

For the reasons that follow, I will recommend that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, should be reversed and the matter remanded for further proceedings.

## Analysis

### A.     Standards of review

### 1.     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[18] ECF # 15 at 12.

[19] *Id.* at 19.

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence.  If such is the case, the Commissioner survives "a directed verdict" and wins.[21]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.  The relevant evidence from the administrative record will be discussed in detail as part of the following analysis.

**2.      *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such

---

[23] 20 C.F.R. § 416.927(d)(2). The companion regulation for disability insurance benefits applications is § 404.1527(d)(2). Swartz filed only an application for supplemental security income benefits.

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a

---

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. § 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of

---

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

-10-

physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.   Application of standards**

This case centers on the weight given by the ALJ to opinions from two treating sources: Dr. Todd Rafferty, M.D. and Paul Schoenberg, Ph.D. Swartz argues that if these treating source opinions had been properly weighted, and the functional limitations expressed therein been incorporated into the RFC, the resulting functional limitations would preclude full-time employment.

The ALJ determined that these opinions were entitled to only "little weight."[71] Instead, the ALJ concluded, based on the "considerable weight" given to the opinion of a state agency

---

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] Tr. at 27.

reviewing physician,[72] that Swartz was therefore capable of light work with certain functional restrictions.[73] The VE, in turn, testified that a significant number of jobs would be available to a person with the limitations set out in the RFC.[74] Swartz contends, based on the VE's testimony, that this conclusion is untenable under the more restrictive RFC that would require him to either be off task more than 20 percent of the time or miss more than 4 days of work per month.[75]

Because my conclusion as to Dr. Rafferty, which will be set forth below, will be enough to require a remand, I will not here address the issues raised concerning Schoenberg.

1. ***Weight accorded to Dr. Rafferty opinion***

In deciding to accord greater weight to the functional opinion of the state agency reviewing physician, Dr. W. Jerry McCloud, M.D., the ALJ noted that Dr. McCloud had "the opportunity to examine the claimant's records, to which he cited liberally in support of his conclusions, and is well-versed in the terminology and analytical framework employed in the disposition of these claims."[76] Moreover, the ALJ also noted that Dr. McCloud's opinion was

---

[72] *Id*. at 26.

[73] *Id*. at 22.

[74] *Id*. at 29.

[75] ECF # 15 at 19-20 (citing tr. at 717, 725, 752).

[76] Tr. at 26.

"consistent with the essentially benign objective diagnostic studies included in the record and the essentially normal physical examinations."[77]

Swartz, however, argues that in forming his opinion Dr. McCloud did not have the benefit of either the opinions or treatment notes of Dr. Rafferty, Swartz's treating physician.[78] In particular, Swartz observes that Dr. McCloud provided his opinion on October 28, 2011,[79] while Swartz's treatment with Dr. Rafferty only began on September 26, 2011[80] - thus, barely a month before Dr. McCloud's opinion was given - and continued until July 26, 2013,[81] when Dr. Rafferty furnished his second functional opinion, and almost two years after the date when Dr. McCloud authored his functional opinion.

It is troubling that the ALJ relied on the opinion of a state agency reviewing source when that source had not himself considered the opinions of claimant's treating source. As the Sixth Circuit recently stated, the regulations provide that in general an ALJ will assign more weight to the opinion of an examining source rather than that of a reviewing one.[82] Although under certain conditions the ALJ may assign greater weight to the opinion of a state

---

[77] *Id*. (citing transcript).

[78] ECF # 15 at 16.

[79] Tr. at 527-32.

[80] *Id*. at 534.

[81] *Id*. at 716.

[82] *Miller v. Comm'r of Soc. Sec*., No. 15-1405, 2016 WL 362423, at *9 (6th Cir. Jan. 29, 2016)(citation omitted).

agency consultant over that of a treating or examining source, those situations most commonly arise when the non-examining source opinion "is based on a review of the complete case record."[83] And where the non-examining source opinion, as here, has not reviewed the complete case record, the ALJ must acknowledge that fact before giving greater weight to the opinion of the non-examining source, and then provide sufficient explanation for assigning significant weight to the non-examining source's opinion.[84] The Sixth Circuit has also recently emphasized that the entire case record should be provided to a non-examining consultant before that consultant's opinion is given significant weight by the ALJ.[85]

Here, the ALJ does not directly acknowledge that Dr. McCloud, the state reviewing source, did not have any access to the later records and opinions of Dr. Rafferty, the treating source. The ALJ's comments that Dr. McCloud had the opportunity to examine the claimant's record, and that he cited to that record, obscures the truth that Dr. Rafferty's notes and opinions were not part of that record. At the very least, this absence should have been clearly acknowledged by the ALJ and then plainly factored into any weight given to Dr. McCloud's opinion.

---

[83] *Id.* at 10 (citations omitted).

[84] *Id.* (citation omitted).

[85] *Brantley v. Comm'r of Soc. Sec.,* No. 15-5309 (6th Cir. Jan. 29, 2016)(citing *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 513-14 (6th Cir. 2010).

Moreover, the overall treatment of Dr. Rafferty's treating source opinion did not fully conform with the mandates of *Gayheart*, and thus the Commissioner's own regulations. Rather than the clear, two-step analysis that is required, the ALJ here, as is so often the case, appears to impermissibly "collapse" the two steps into one, or as was stated during the oral argument, a shortcut was taken whereby the two distinct *Gayheart* steps were reduced to one.[86]

Although this is an all-to-frequent occurrence, with increasingly little consequence, such a "shortcut" or analytical collapsing of distinct criteria, has the real world effect of beginning the ALJ's analysis of a treating source opinion by assuming it is nothing special; just another opinion from an acceptable medical source, to be given some kind of weight.

No where in the shortcut is there the recognition, crucial to the first level of treating source analysis mandated by regulations, that such an opinion is presumptively entitled to controlling weight - a presumption that then may be overcome in the first instance only by a showing that the opinion is either not well-supported by clinical and laboratory findings or that it is, in some specific way, inconsistent with the other evidence in the record. It is only after such an analysis that the ALJ may then freely assign an alternative weight to the opinion, provided good reasons are given for that assigned weight.

As previously noted, it is clear that courts are increasingly less strict in demanding two clearly separate analyses in cases of treating source opinions, but have been satisfied when

---

[86] *See*, ECF # 20 at 9.

the ultimate decision as to weight, regardless of the precision of its formation, considers the *Gayheart* factors and is supported by good reasons.[87]

Here, Dr. Rafferty provided a total of four opinions addressing Swartz's functional capacity arising out of his chronic pancreatitis, back pain and asthma;[88]his asthma;[89] and his back and neck pain.[90]All four opinions state that Swartz would miss work more than four days per month, but make distinctions between things like his capacity to stand, walk or sit (unaffected by his asthma,[91] but sitting is affected by his pancreatitis[92] and all postural conditions are affected by his back and neck pain[93]), and when he will be off task (no restriction as to his pancreatitis,[94] but off task 20 % of the time due to asthma[95] and 25 % of the time due to back and neck pain).[96]

---

[87] *See, Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F.Supp.3d 550, 558 (N.D. Ohio, 2014)(Baughman, M.J.)(citation omitted).

[88] Tr. at 573-74.

[89] *Id*. at 724-25.

[90] *Id*. at 716.

[91] *Id*. at 724-25.

[92] *Id*. at 573-74.

[93] *Id*. at 716.

[94] *Id*. at 573-74.

[95] *Id*. at 724-25.

[96] *Id*. at 716.

The ALJ acknowledges that there are different functional limitations arising out of these opinions, but rather than noting that different limitations arise from different physical conditions, the ALJ cites the different limitations in the different opinions as "multiple inconsistencies," for which there is "no easy explanation."[97] For example, the ALJ points to the "inconsistency" that the February, 2012 opinion, which mentioned both pancreatitis and back pain, had functional limitations on sitting, but not walking or standing, while the July, 2013 opinion, which dealt only with back and neck pain, restricted Swartz to limited periods where he could stand, walk or sit.[98]

As Swartz observes, even if the earlier opinion, which is less limiting as to walking and standing, was principally due to his back pain, not the pancreatitis, it is by no means obvious that the difference in these areas in the later opinion must necessarily be an inconsistency. Without more, it is equally plausible that the more restrictive limitations in the later opinion, which more closely addresses his neck and back pain, are due to the increasingly debilitating effects of the "multilevel degenerative disk disease" noted in CT scan of Swartz's cervical spine taken on August 25, 2012.[99] Indeed, a treatment note from only a few months later on September 17, 2012, noted that the pain that it formerly "was in the lower back and neck" has now  "radiated to the back and right thigh"[100] - a finding that

---

[97] *Id.* at 27.

[98] *Id*.

[99] *Id*. at 665.

[100] *Id*. at 660.

would be entirely supportive of, and consistent with, a worsening of the degenerative disk disease noted in August, 2012, as well as the later 2013 functional capacity finding that the same condition that has previously not affected walking or standing now does impair those functions.

In short, a review of the supporting record shows that this reason for discounting the weight given to Dr. Rafferty's opinion is not a good reason, such as would support the ALJ's assignment of lesser weight.

Similarly the ALJ's statement that Dr. Rafferty's opinions must be discounted because they are based, to some degree, on Swartz's "subjective complaints," and thereby compromised the objective foundation for Dr. Rafferty's opinions, must also be questioned. First, the ALJ made this comment about "some of [Dr. Rafferty's] limitations" being impermissibly based on Swartz's own subjective complaints, but then failed to specify precisely which limitations were based on only subjective foundations. As such, it is difficult for me, as the reviewing Court, to guess at what limitations are at issue. Absent a clear statement of what specific limitations are unsupported because they are grounded on subjective complaints, I am without a basis for meaningful judicial review of the decision to accord little weight to *all* the limitations in four different opinions.

Further, as noted above, I am aware that there is significant support in the record for at least some of the functional limitations in the form of recognized clinical, diagnostic tests, such as CT scan that showed "surgical changes" and "multilevel degenerative disk disease" in Swartz's cervical spine.

-20-

Accordingly, substantial evidence does not support the finding that Dr. Rafferty's functional opinions are entitled to only little weight. The reasons cited by the ALJ are not "good reasons" within the meaning of that term. This case must be remanded.

Given the absence of substantial evidence to support the lessening of the weight given to the functional limitations opinions of Swartz's treating source, those opinions must be re-considered by the ALJ.  Further, if those opinions are entitled to more weight, the effect of that additional weight on the ultimate RFC in this case must necessarily be also re-calibrated. Finally, the re-examination of Dr. Raffterty's opinions must also require a re-examination of the weight given to the opinions of the state reviewing physician. As explained above, the review of the weight that should be given to the opinion of Dr. McCloud must factor in that Dr. McCloud never saw the treating source opinions of Dr. Rafferty, nor the objective medical record available to Dr. Rafferty.

### Conclusion

For the reasons stated, the matter is hereby remanded for further proceedings consistent with this opinion.


IT IS SO ORDERED.


Dated: February 9, 2016                           s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge